(79 South. 401)

No. 22962.

CITY OF SHREVEPORT v. BOARD OF COM'RS OF CADDO LEVEE DIST.

(June 29, 1918.)

*(Syllabus by the Court.)*

1. DRAINS ⬚18—INTERFERENCE WITH MUNICIPAL AFFAIRS—STATUTE.

The city of Shreveport is expressly excluded from the territorial limits within which the Caddo levee board is authorized to exercise its functions, and the board has no authority to invade that city and interfere with the municipal officers in the administration of its affairs.

2. DRAINS ⬚41—LEVEE BOARD—AUTHORITY TO CUT DRAINAGE CHANNELS—STATUTE.

The Caddo levee board derives no authority from Act No. 61 of 1904 to cut new drainage channels, and, still less, to divert the water falling upon many thousands of acres of land from its natural drain and carry it, by means of a new channel, through a city of 40,000 inhabitants.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit for injunction by City of Shreveport against the Board of Commissioners of Cad-

do Levee District. Judgment for plaintiff, and defendant appeals. Affirmed.

L. C. Blanchard, Dist. Atty., and William C. Barnette, Sp. Counsel, both of Shreveport, for appellant. Lewell C. Butler, City Atty., of Shreveport, for appellee.

### Statement of the Case.

MONROE, C. J. The defendant board, in the discharge of the duties imposed upon it, deemed it advisable to close the mouth of Twelve Mile bayou, a navigable stream which empties into Red river at a point about five miles above Shreveport. It was necessary, however, for it to obtain the consent of the Secretary of War, and, with a view of obtaining that consent, it proposed to divert the waters of the bayou by means of a navigable canal, through Cross Lake and Cross bayou, by way of "The Pass" and "Bonner's ditch," into the Red river at Shreveport, which proposition was accepted upon certain conditions, among which were the following:

"1. That it is to be understood that this authority does not give any property rights either in real estate or material, or any exclusive privilege; that it does not authorize any injury to private property or invasion of private right, or any infringement of state law or regulations, nor does it obviate the necessity of state assent to the work authorized, as it merely expresses the assent of the federal government, so far as concerns the public right of navigation. * * *

"8. That all bridges crossing the waterways between Twelve Mile bayou and Red river shall be so changed, at the expense of the grantee or other local interests, as to provide suitable passage for all boats using the waterway."

It is admitted that the work of cutting the canal from Twelve Mile bayou to Cross bayou, a distance of 4.3 miles, has been completed, or is nearing completion, and that defendant purposes to make use of Cross bayou for a distance of 1.9 miles from its mouth, up to which point it is shown to have been, at one time, navigable, though not within the past 20 or 25 years. It is also shown that, at about that point, the city of Shreveport has built a bridge, as part, or at the foot, of one of its principal streets; that the intake pipe, whereby its inhabitants are supplied with water, crosses the stream there; and that defendant was about removing those obstructions when it was restrained from so doing by a writ of injunction issued from the district court.

Capt. Taylor, the president of the defendant board, was interrogated, and replied, concerning the present situation as follows:

"2. Now, Capt. Taylor, the levee board, in removing these obstructions, it was their purpose to provide, as I understand, another bridge and another waterworks pipe for the city, leaving the question as to who should pay for this, open for their consideration; that is a fact? A. This work had to be done; we asked the city, the police jury, and the T. & P. to remove these obstructions, and they refused to do it, and we agreed to have a friendly suit, but would go on and remove the obstructions and let the court say who should pay for it."

It further appears from the testimony of Capt. Taylor that defendant has completed its levee system on the west bank of Red river from the Arkansas line to Twelve Mile bayou, and now proposes, by building across the mouth of that bayou, to continue the levee to Cross bayou, thereby, as he says, redeeming 40,000, or 50,000 acres of land. But, in order to accomplish that purpose, it must comply with the requirements of the Secretary of War by furnishing a channel, for purposes of navigation, leading into Red river, as a substitute for that which is to be closed, and that channel, as we understand the situation, will impose upon Cross bayou the burden of carrying the drainage heretofore carried by Twelve Mile bayou, in addition to that imposed on it by nature. There was judgment in the district court for plaintiff, and defendant has appealed.

### Opinion.

[1] We take it to be conceded that the bridge and water pipe, about which this controversy has arisen, are entirely within the

corporate limits of the city of Shreveport, since it is so positively alleged in the petition, and the case has been argued upon that theory, which being true, we are at a loss to understand whence the defendant derives its authority to meddle with either of those improvements, since Act 74 of 1892, whereby it was called into existence, in its first section (amended and re-enacted by Act 160 of 1900) delimits the territory within which it was authorized to exercise its functions, and in that connection uses the words, "not including the city of Shreveport," which harmonize with the language of the legislative charter of the city of Shreveport (Act 158 of 1898), which confers upon that corporation the general and special powers usual in such cases, including the power—

"to regulate and make improvements in the streets, alleys, public squares, wharves and other public property. * * *

"To regulate the proportion and to make and repair all common sewers, drains, canals, public roads, levees, dykes, causeways and bridges. * * *

"For cleaning of the banks of the river or other navigable streams within the limits of the city, for the reopening of such amount of natural drains as have been obstructed * * * or opening, or filling up of any water course which is not navigable."

Section 23 of the act of 1898 declares that:

The street commissioner shall have, under the direction of the mayor and council, "general superintendence of all matters relating to the streets; * * * the construction and repairing of bridges and crossings and drainage of the city; the superintendence of the waterworks," etc.

The grants thus mentioned include the power to open a natural drain within the corporate limits, such as Cross bayou, and to build, maintain, and regulate a bridge which spans it and forms part of a highway over which many thousands of persons enter and leave the city annually, and we should be surprised to learn that such power had been withdrawn from the municipal authorities and lodged in the levee board, even though, for levee purposes, the locus in quo were within the territorial jurisdiction of the board.

[2] If we are correct in the view thus stated, defendant, having no capacity to move beyond the limits within which, by the law of its creation, it is established, has no warrant to assume control of affairs which the state, as the author of both, has intrusted to another corporation; nor does it matter whether the bridge and pipe which it purposes to move obstruct a navigable or a nonnavigable stream, since defendant has not been endowed with authority or capacity to invade the city of Shreveport and execute its own ex parte judgment concerning the legality of the acts of that corporation. It is confined, as is the city of Shreveport, to its own bailiwick. In the case of Petit Anse Coteau Drainage Dist. v. Iberia & V. Railroad Co., 124 La. 502, 50 South. 512, to which we are referred by counsel on both sides, the plaintiff was acting within the powers conferred upon it, and within the territory designated by law for the exercise of those powers, which were conferred on no other state agency; and it was there held that such corporations, i. e., corporations established to attend to the drainage of particular districts, were authorized to enter upon lands therein, through which the natural drains pass, for the purpose of doing the work necessary to render and keep them efficient, but it was also held that, where new drains were to be cut, they must expropriate and pay for the property required for that purpose. The defendant now before the court was not incorporated for drainage purposes, and, so far as we are informed, has not been invested with the power conferred on drainage corporations, save to the extent of the grant contained in Act 61 of 1904, which is very general in its character, and, in our opinion, falls far short of authorizing defendant to wrest from the city of Shreveport the specific authority confer-

red upon it with respect to drainage within its corporate limits. Moreover, the act of 1904 contains no grant of authority for the cutting of new channels, nor does it contain any suggestion of a grant which would authorize a levee board to divert the water falling upon 40,000 or 50,000 acres of land from their natural drain and carry them, by an artificial channel, through a city of 40,000 inhabitants. It may be that the proposed scheme, when put in operation, will prove satisfactory to all concerned. We know nothing, and have no opinion to express, about that. But we find no law for it. The judgment appealed from is therefore affirmed.

PROVOSTY, J., concurs in the decree.